**James K. HAWLEY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 218–86C.**

United States Claims Court.

June 30, 1987.

Kenny N. Giffard, Fair Oaks, Cal., for plaintiff.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. David M. Cohen, Director, Thomas W. Petersen, Asst. Director, and Major Marilyn Barton, Department of the Air Force, of counsel.

## OPINION

NAPIER, Judge:

This case comes before the Court on defendant's motion for summary judgment [1], plaintiff's opposition thereto and defendant's reply.

Plaintiff's complaint states that plaintiff was involuntarily discharged from the United States Air Force in 1982 after testing positive for cannabinoid (Marijuana). After being notified in 1984 that the urinalysis test results had been declared void, plaintiff filed his claim with the United States Air Force (USAF) for wrongful discharge and requested that his records be corrected and that he be awarded monetary damages. Plaintiff's military records were corrected; however, his claim for money damages was denied. In this action plaintiff seeks damages for active duty pay, allowances and benefits from the date of discharge to the date of judgment plus future pay and benefits that he would have earned.

Defendant (Government), in its motion for summary judgment, argues that plaintiff's claim sounds in tort and that therefore this Court is without jurisdiction to consider plaintiff's claim. Defendant further argues that the correction plaintiff requested and obtained did not create an entitlement to money and that plaintiff cannot now raise the issue of the legality of his discharge and his entitlement to back pay.

For the reasons discussed below, the Court concludes that the defendant's motion for summary judgment should be granted and that plaintiff's complaint should be dismissed.

---

1. Defendant's motion was styled as "Defendant's Motion to Dismiss Or, In The Alternative, For Summary Judgment." Because defendant appended numerous exhibits to its motion, it shall be treated as a motion for summary judgment pursuant to RUSCC 12(b) and disposed of as provided in RUSCC 56.

*Facts*

The plaintiff, James K. Hawley (Hawley), enlisted in the United States Air Force (USAF) on November 27, 1974, for a term of 6 years. On June 19, 1981, Hawley reenlisted for another 6 year term. On April 28, 1982, Hawley, whose rank at that time was Staff Sergeant was required to submit to a "command directed" urinalysis. Upon the basis of a positive test for cannabinoid and pursuant to Air Force Manual (AFM) 39–12, Chapter 2, Section 1 (1966), he was separated from active duty. Hawley received an honorable, but involuntary, discharge on July 7, 1982, on the basis of "PERSONAL ABUSE OF DRUGS—OTHER THAN ALCOHOL."

In January of 1984, the Department of the Air Force, Separations Division, informed Hawley that his urinalysis test results were void, because "the laboratory which performed the test did not strictly follow Department of Defense procedures for urinalysis." Hawley was also informed that he could submit an application to the Air Force Board for the Correction of Military Records (AFBCMR) to correct any error or injustice which may have occurred. On February 29, 1984, Hawley submitted an application on the appropriate form (DD Form 149), but he did not specify the relief sought. Rather in Block 11 of the application he wrote: "My attorney will notify you with specifics." The application was returned to him with instructions to complete Block 11. Hawley resubmitted the same application with Block 11 unchanged, but included an attachment consisting of two letters which his attorney had written.

One letter dated July 3, 1984, from Hawley's attorney to Hawley, instructed him to indicate in Block 11 that the following corrections to his DD Form 214 (Certificate of Release or Discharge from Active Duty) should be made: (1) delete the reference in item 25 to AFM 39–12 and change it to separation under Air Force Regulation 39–10; (2) delete any reference in item 28 to drug abuse and correct it to read separation made for the convenience of the Air Force; and (3) delete any code reference to AFM 39–12 in items 26 and 27 and change to reflect separation under 39–10.

The second letter which Hawley attached to the resubmitted application to the AFBCMR was a copy of his attorney's July 3, 1984, letter to the USAF claiming, on behalf of Hawley, $500,000 in general and special damages under 10 U.S.C. § 2733, the Military Claims Act, for Hawley's wrongful discharge as a result of the USAF's allegedly "negligent testing" of Hawley's urine specimen.

On August 7, 1984, in response to plaintiff's application for correction of military records, the Executive Secretary of the AFBCMR sent Mr. Hawley's attorney a letter which included a copy of an advisory opinion issued by the Air Force Manpower and Personnel Center which had been prepared for submission to the AFBCMR. The letter requested that Mr. Hawley's attorney review and comment upon the advisory opinion. It further stated that "If no comment is received within 30 days from the date of this letter, the application will be released for consideration by the Board, in its turn and on the evidence of record." The advisory opinion discussed the relief which Mr. Hawley requested and it stated in regard to damages:

> The claim for damages in the amount of $500,000 is inappropriate for BCMR consideration. This request is not a form of relief to correct the applicant's record. The relief appropriate under the circumstances would be reinstatement with back pay and allowances which the applicant has not requested.

No comment was ever received from Mr. Hawley or his attorney regarding the advisory opinion.

On July 9, 1984, a USAF Claims Officer, in response to Mr. Hawley's attorney's letter of July 3, 1984, sent Mr. Hawley's attorney a letter informing him of the necessity of filing Standard Form 95 for each claim for damages stemming from the alleged wrongful discharge. On October 4, 1984, the USAF Claims Officer sent Mr. Hawley's attorney another letter requesting the filing of Standard Form 95 (Claim for Damage, Injury, or Death). The letter

also requested additional information including the nature of the special and general damages claimed and how the damages claimed were determined to be $500,000.

On October 30, 1984, Mr. Hawley's attorney returned a completed Standard Form 95 signed by the plaintiff. The damages were claimed as a result of the "negligent misconduct" of the Air Force as well as for the subsequent "wrongful discharge" of Mr. Hawley. Specifically, general damages of $250,000 were claimed for the emotional and psychological pain and suffering arising from the discharge, as well as special damages which included $34,000 in lost wages and benefits from July 1982 until January 1984 as well as $216,000 in lost future wages, benefits and promotions.

The Record of Proceedings from the AFBCMR meeting dated 13 March 1985, regarding Mr. Hawley's claim relates that the Board considered Mr. Hawley's request of $500,000 to be inappropriate for consideration by the Board since the relief was not a correction of the record. It additionally stated that the "relief appropriate under the circumstances would be reinstatement with back pay and allowances, which applicant has not requested."

On March 21, 1985, the USAF directed that Hawley's records be corrected and on April 4, 1985, they notified Hawley's attorney of the changes. The records were to be corrected to delete all references to urinalysis and discharge under AFM 39–12 for Personal Abuse of Drugs Other Than Alcohol and to show that he was honorably discharged on July 7, 1982, under Air Force Regulation (AFR) 39–10 and awarded a re-enlistment eligibility status code of RE–IJ (eligible for reenlistment). Hawley's attorney was further notified that after the records were corrected Air Force Accounting and Finance Center would review them to determine whether Hawley was entitled to any monetary benefits as a result of the correction.

On October 2, 1985, the USAF denied Mr. Hawley's claim for damages stating that there was no evidence of negligence on behalf of the Air Force; and further assuming *arguendo* that there was negli-

gence, the claim would be barred since the urinalysis testing was directly related to his military service. *See Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

*Discussion*

The jurisdiction of the United States Claims Court as set forth in 28 U.S.C. § 1491(a) states that this Court has jurisdiction over money claims against the United States "founded either upon the Constitution, or any Act of Congress, on any regulation of an Executive Department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

In its motion for summary judgment, the Government argues that "although Mr. Hawley avoids any reference to tort or negligence in his complaint, it is clear that his *sole* basis for relief is predicated upon allegations sounding in tort." Indeed, plaintiff's action is brought to recover damages allegedly associated with the negligence of the Air Force in publishing and processing the test results.

In response, plaintiff argues that in several cases "sounding in tort", the Claims Court has found a jurisdictional basis predicated upon a breach of contract, even when factually the act constituting the breach was arguably a tort: the negligent performance of the contract. *See Bird & Sons, Inc. v. United States*, 190 Ct.Cl. 426, 420 F.2d 1051 (1970); *H.H.O., Inc. v. United States*, 7 Cl.Ct. 703 (1985); *Hector Cruz-Casado v. United States*, 213 Ct.Cl. 498, 553 F.2d 672 (1977).

It is clear that actions sounding in tort are clearly beyond the jurisdiction of this Court and, therefore, must be dismissed. *Armstrong v. United States*, 230 Ct.Cl. 966 (1982), *cert. denied*, 459 U.S. 1102, 103 S.Ct. 723, 73 L.Ed.2d 949 (1983); *Miraglia v. United States*, 141 Ct.Cl. 664 (1958); *Baird v. United States*, 5 Cl.Ct. 324 (1984). Although, as plaintiff argues, this Court has entertained suits which involve a tortious breach of contract, the case at

hand does not fall into that exception. Despite the fact that Mr. Hawley entered into an enlistment contract with the USAF, "it has long been settled that a serviceman's rights are statutory, not contractual." *Sanders v. United States*, 219 Ct.Cl. 285, 295, 594 F.2d 804, 809 (1979), *citing Bell v. United States*, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); *Keef v. United States*, 185 Ct.Cl. 454 (1968). Therefore, plaintiff's claim does not fit within the exception and this Court is without jurisdiction to consider the merits of the claim.

Even assuming *arguendo* that this Court has jurisdiction to consider plaintiff's claim, recovery would be precluded for other reasons.

■ It is clear that the correction of records requested by Mr. Hawley and granted by the AFBCMR did not change the fact of his separation from the Air Force on July 7, 1982, and did not create an entitlement for him to receive pay beyond that date. *Hixon v. United States*, 186 Ct.Cl. 949 (1968); *Goldstein v. United States*, 131 Ct.Cl. 228, 233, 130 F.Supp. 330, *aff'd*, 350 U.S. 888, 76 S.Ct. 143, 100 L.Ed.2d 782 (1955).

10 U.S.C. § 1552 states that

(a) The Secretary of a military department * * * may correct any military record of that department when he considers it necessary to correct an error or remove an injustice. (and)

* * * * * * *

(c) * * * may pay * * * a claim for the loss of pay, allowances, compensation, emoluments, or other pecuniary benefits * * * if, as a result of correcting a record * * * the amount is found to be due the claimant *on account of his * * * service* in the * * * Air Force * * *. [Emphasis added.]

■ It has been held that an enlisted members entitlement to pay and allowances continues only until the end of the current enlistment, unless the member has been properly discharged prior to that time. *Austin v. United States*, 206 Ct.Cl. 719, 723–24, *cert. denied*, 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975); *McEniry v.*

*United States*, 7 Cl.Ct. 622, 626, *aff'd* 785 F.2d 323 (Fed.Cir.1986). A serviceman does not have a right to remain in the service until the end of his enlistment (*McAulay v. United States*, 158 Ct.Cl. 359, 305 F.2d 836 (1962), *cert. denied*, 373 U.S. 938, 83 S.Ct. 1543, 10 L.Ed.2d 693 (1963)) and, his removal may be accomplished administratively. *Rowe v. United States*, 167 Ct.Cl. 468 (1964), *cert. denied*, 380 U.S. 961, 85 S.Ct. 1103, 14 L.Ed.2d 152 (1965); *see Casey v. United States*, 8 Cl.Ct. 234, 239 (1985).

■ In the instant case, Mr. Hawley's discharge became effective on July 7, 1982, despite the fact that his enlistment term would not be completed until June 19, 1987. Mr. Hawley's request that his records be corrected to indicate that the authority for his discharge be changed from AFM 39–12 to AFR 39–10 and that the reason for his discharge be changed from "personal abuse of drugs—other than alcohol" to "voluntary—miscellaneous reasons" was granted by the AFBCMR therefore indicating that Mr. Hawley was properly discharged. Accordingly, Mr. Hawley cannot be entitled to back pay "on account of his * * * service in the Air Force" after his discharge date.

■ Finally, the correction requested by Mr. Hawley and granted by the AFBCMR did not create an entitlement to money. As the Court of Claims has held, he cannot now at this stage in the proceedings raise the issue of the legality of his discharge and his entitlement to back pay as a result of his discharge:

It has long been part of our law that a party cannot raise an issue on appeal to a court when it failed to raise it before an administrative agency competent to hear it * * *. (Citation omitted.) A party is not entitled to many independent chances to prevail, and his voluntary choice will often determine the extent of a court's review. Decision-making bodies normally have the power to correct their own errors, *Bookman v. United States*, 197

Ct.Cl. 108, 453 F.2d 1263 (1972), and the Correction Board is no exception.

*Doyle v. United States*, 220 Ct.Cl. 285, 311, 599 F.2d 984, 1000–01, *amended*, 220 Ct.Cl. 326, 609 F.2d 990 (1979), *cert. denied*, 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980). Although Mr. Hawley requested $500,000 in general and special damages pursuant to 10 U.S.C. 2733, he did not request reinstatement and back pay. Thus, he is precluded from relief in the form of back pay and reinstatement in this forum.

In its July 26, 1984, advisory opinion to the AFBCMR, a copy of which was mailed to plaintiff's attorney with a cover letter requesting comment, the Air Force Manpower And Personnel Center stated:

> The claim for damages in the amount of $500,000 is inappropriate for BCMR consideration. This request is not a form of relief to correct the applicant's record. The relief appropriate under the circumstances would be reinstatement with back pay and allowances *which the applicant has not requested.* [Emphasis added.]

Neither plaintiff nor his attorney responded to this correspondence or sought reinstatement or back pay, and plaintiff may not use "the beneficial administrative determination as a springboard to obtain relief which he disowned before the [AFBCMR] itself, or never sought from it explicitly or implicitly." *DeBow v. United States*, 193 Ct.Cl. 499, 503, 434 F.2d 1333, 1335, *cert. denied*, 404 U.S. 846, 92 S.Ct. 150, 30 L.Ed.2d 84 (1970). The reasoning behind this doctrine is set forth in *Doyle v. United States*, 599 F.2d at 1001, where the Court stated:

> The doctrine that requires that known objections be made to the agency is to insure "that administrative agencies are thereby afforded an opportunity to make adjustments and correct errors on the administrative level, thus permitting the Government to mitigate or avoid large damage claims that might otherwise be created (*United States v. Hogpuch Co.*, 328 U.S. 234, 239 [66 S.Ct. 1000, 1003, 90 L.Ed. 1192] (1946)." *Blackmar v. United States*, 354 F.2d 340, 347, 173 Ct.Cl. 1035, 1045 (1965).

Accordingly, the Court is not allowed to grant plaintiff's request for back pay.

### Conclusion

A motion for summary judgment under Rule 56 of the Rules of the United States Claims Court shall be granted where it appears from the pleadings that there is no genuine issue as to any material fact *and* that such facts entitle the moving party to a judgment as a matter of law. RUSCC 56(c); *Cooper v. Ford Motor Co.*, 748 F.2d 677, 679 (Fed.Cir.1984). Summary judgment may not be granted where there are disputed material factual issues which can only be resolved by trial on the merits. *Yuba Goldfields, Inc. v. United States*, 723 F.2d 884 (Fed.Cir.1983); *Niagara Mohawk Power Corp. v. United States*, 207 Ct.Cl. 576, 583, 525 F.2d 1380, 1385 (1975). The party seeking summary judgment has the burden of showing that there is no genuine issue of material fact. All inferences must be viewed in the light most favorable to the party opposing this motion. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

Because there are no material facts in dispute and because the defendant is entitled to judgment as a matter of law, the defendant's motion for summary judgment is granted and the Clerk is directed to dismiss the petition.

IT IS SO ORDERED.